ALLAN v M & S MORTGAGE COMPANY

Docket No. 69916. Submitted January 4, 1984, at Lansing.—Decided
October 2, 1984. Leave to appeal applied for.

Plaintiffs, Florence and Elmer Allan, filed a suit in the Jackson
Circuit Court against defendants, M & S Mortgage Company,
Samuel S. Topper, and others, seeking declaratory and injunc-
tive relief, certain relief available under the Michigan Con-
sumer Protection Act, attorney fees and costs. The action arose
as a result of a loan which the plaintiffs secured from some of
the defendants to be used to repair the Allan residence, pay the
arrearages on the first mortgage on the residence and purchase
a used truck. The primary issue involved in the action is
plaintiffs' challenge to the ability of second-mortgage lenders to
insist that homeowners form a corporation in order to borrow
at interest rates which would be usurious if charged to an
individual. In their action, plaintiffs specifically sought a decla-
ration that the Florence Allan Company was a sham corpora-
tion formed to subvert the usury statute and a declaration
stating the exact amount of money due under the note involved
with all prior interest payments being applied to the principal
balance. Plaintiffs also sought an injunction against the foreclo-
sure sale of plaintiffs' home. The circuit court, James G. Flem-
ing, J., issued an order temporarily restraining the foreclosure
on the contingency that plaintiffs pay the principal sum due on
the note by a specific date. Plaintiffs were unable to pay the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 45 Am Jur 2d, Interest and Usury §§ 262-267.
 Statute denying defense of usury to corporation. 63 ALR2d 924.
[2] 45 Am Jur 2d, Interest and Usury § 270.
[3] 45 Am Jur 2d, Interest and Usury § 4.
[5] 45 Am Jur 2d, Interest and Usury §§ 266, 267, 302.
[6] 45 Am Jur 2d, Interest and Usury §§ 217, 307, 309.
[7] 45 Am Jur 2d, Interest and Usury §§ 250-252.
[8] Am Jur 2d New Topic Service, Consumer and Borrower Protection
 § 234.
[9] Am Jur 2d New Topic Service, Consumer and Borrower Protection
 §§ 205, 209 et seq.
 Scope and exemptions of state deceptive trade practice and con-
 sumer protection acts. 89 ALR3d 399.

principal, the foreclosure was completed and one of the defendants took possession of the property. The defendants' motion for summary judgment was thereafter granted, based upon a failure to state a cause of action, the court concluding that there was no actual controversy between the parties and suggesting that plaintiffs' relief was limited to bringing an action as shareholders against the Florence Allan Company to have it declared a dummy corporation. Plaintiffs appeal. The Court of Appeals permitted the Attorney General to intervene on plaintiffs' behalf and also granted the request of 15 designated mortgage lenders for leave to file an amicus curiae brief. *Held:*

1. In Michigan, if a loan is made to a corporation, the corporation, by statute, is prohibited from asserting the defense of usury. Where an individual borrows money through a shell corporation to further his own business or commercial enterprise, the defense of usury is not available. However, where the loan was, in fact, although not in form, made to an individual borrower to discharge personal debts and obligations and not to further a corporate or personal enterprise, the individual borrower may assert the defense of usury.

2. There was a controversy between the parties in regard to the declaratory relief sought. Plaintiffs are not entitled to a declaration that the main contract is void. However, the trial court should make a determination of the amount of interest paid and, if the contract was found to be usurious, plaintiffs were entitled to a declaration of the exact amount of money due under the note and to have all the interest previously paid applied against any outstanding principal debt.

3. The trial court is to rule on defendant's claim that plaintiffs are precluded from obtaining declaratory relief because they signed an affidavit purporting to waive the defense of usury.

4. Count I of plaintiffs' complaint, seeking declaratory relief, and Count II alleging violations of the Michigan Consumer Protection Act and requesting declaratory relief, actual damages and attorney fees, stated a claim upon which relief could be granted. The trial court incorrectly granted the summary judgment.

5. Plaintiffs' pleadings sufficiently allege conduct which, if proven, falls within the Michigan Consumer Protection Act's definition of "trade or commerce".

Reversed and remanded.

1. INTEREST — CORPORATIONS — USURY.
    A domestic or foreign corporation, whether or not formed at the

request of a lender, may by agreement in writing, and not otherwise, agree to pay a rate of interest in excess of the maximum legal rate of 7% and in such case the defense of usury is prohibited (MCL 438.31, 450.1275; MSA 19.15[1], 21.200[275]).

2. Interest — Corporations — Usury.

The defense of usury is not available where an individual borrows money through a shell corporation to further his own business or commercial enterprise; however, where the loan was in fact, although not in form, made to an individual borrower to discharge personal obligations and not to further a corporate or personal enterprise, the individual borrower may assert the defense of usury (MCL 450.1275; MSA 21.200[275]).

3. Interest — Usury.

The purpose of the law of usury is to protect the necessitous borrower.

4. Interest — Usury — Corporations — Household Borrowers.

A business operation, which was required to incorporate as a prerequisite to obtaining a loan, may not assert the defense of usury; however, a lender is not authorized to seek the incorporation of household borrowers in hopes of circumventing the usury laws (MCL 450.1275; MSA 21.200[275]).

5. Interest — Usury — Assignees.

An assignee is protected from a usury defense if the assignee had no notice of the usurious contract and acquired its interest in good faith for valuable consideration (MCL 438.5; MSA 19.3).

6. Interest — Mortgages — Usury — Criminal Law — Attorney Fees — Costs.

A mortgage lender which charges a usurious rate of interest is barred from recovering any interest and the borrower is entitled to recover attorney fees and court costs; the penal provision regarding the forfeiture of interest attaches only upon an attempt by the lender to seek enforcement by way of foreclosure. (MCL 438.22; MSA 19.15[2]).

7. Interest — Usury — Declaratory Judgment.

A borrower at a usurious rate of interest is not entitled to a declaration that the main contract is void; however, upon a finding of usury, the borrower is entitled to a declaration of the exact amount of money due and to have all of the interest

previously paid applied against any outstanding principal debt (MCL 438.32; MSA 19.15[2]).

8. CONSUMER PROTECTION — CONSUMER PROTECTION ACT — PRIVATE CAUSE OF ACTION — "PERSON".

The Michigan Consumer Protection Act defines a "person" to include a corporation for purposes of the provision establishing a private cause of action for violations of the act (MCL 445.902[b], 445.911; MSA 19.418[2][b], 19.418[11]).

9. CONSUMER PROTECTION — CONSUMER PROTECTION ACT — UNLAWFUL ACTS — "TRADE OR COMMERCE".

The Michigan Consumer Protection Act defines unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce which are deemed to be unlawful; the act defines trade or commerce as the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes including the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article (MCL 445.902[c], 445.903; MSA 19.418[2][c], 19.418[3]).

*Law Offices of Robert D. Flack* (by *Robert D. Flack* and *Daniel L. Vogt),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Mark A. Goldman,* Assistant Attorney General, for the Attorney General.

*Martin W. Bordoley,* for defendants M & S Mortgage, Topper, Robinson, Szymula and Wine.

*J. Leonard Schreiman,* for defendant Lepler.

Amicus Curiae:

*Dickinson, Wright, Moon, VanDusen & Freeman* (by *Robert P. Hurlbert* and *Sara Zivian Zwickl),* for amicus lenders.

Before: BRONSON, P.J., and M. J. KELLY and R. S. HOFFIUS,* JJ.

PER CURIAM. Plaintiffs, Florence and Elmer Allan, appeal as of right from the circuit court's order granting summary judgment for defendants and dismissing plaintiffs' complaint for declaratory relief. Plaintiffs' claim for relief under the Michigan Consumer Protection Act, MCL 445.901 *et seq.;* MSA 19.418(1) *et seq.,* also was rejected. The primary issue raised on appeal is plaintiffs' challenge to the ability of second-mortgage lenders to insist that homeowners form a corporation in order to borrow at interest rates which would be usurious if charged to an individual.

I

In October 1980, the Allans were in dire financial straits. Florence Allan responded to a newspaper advertisement for the purpose of obtaining a loan. The proceeds of the loan were to be used to repair the Allan residence, pay the arrearages on the first mortgage on their residence and purchase a used truck. Mrs. Allan was referred to defendant Sheldon Lepler, doing business as "Shelco". Lepler told Mrs. Allan that he would arrange a loan with defendant M & S Mortgage Company, but advised her that she must incorporate to qualify for the loan.

Mrs. Allan met with defendant Goldwyn Robinson, an attorney, at the request of Lepler. She signed a retainer letter authorizing Robinson to form a "corporation on a fee basis". Articles of incorporation were drafted for the "Florence Allan Company". Under the articles, the corporation was permitted to engage in any lawful corporate en-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

deavor. On October 10, 1980, the State of Michigan issued a corporate charter to the Florence Allan Company.

On October 17, 1980, Florence and Elmer Allan attended the mortgage closing at the offices of defendant Samuel Topper, attorney and closing officer for M & S Mortgage. M & S Mortgage agreed to loan the Allans $7,250 at 24% interest, secured by a second mortgage on the Allans' home. The Allans executed a quitclaim deed, drafted by defendant Topper, conveying their interest in their home to the Florence Allan Company for $1. As officers of the Florence Allan Company, the Allans then executed a note for $7,250 at 24% interest and a second mortgage on their home. The $7,250 second mortgage loan included a $1,250 finder's fee payable to Shelco or Sheldon Lepler, $40 to Goldwyn Robinson for attorney fees, and $216.45 for fees to M & S Mortgage. The Allans received a check for approximately $5,000 signed by defendant Mary Szymula, president of M & S Mortgage Company.

At the closing, the Allans signed a number of documents, many of which were blank or incomplete. One of the documents they signed was an affidavit waiving the defense of usury. The Allans also signed an agreement authorizing the lender to pay Shelco from the proceeds of the loans, a notice that the "closer" may not provide legal advice and a consent-to-assignment form which disclosed that M & S Mortgage Company was acting as an agent for an undisclosed principal and would assign the contract immediately. At the conclusion of the closing, the Allans, on behalf of the Florence Allan Company, executed a second quitclaim deed, also drafted by defendant Topper, conveying their residence back to themselves as individuals for $1.

The mortgage was subsequently assigned to de-

fendant Hadley Wine. The Allans were unable to make the payments when Elmer Allan was laid off. Defendant Wine, represented by defendant Robinson, began foreclosure.

On January 11, 1982, plaintiffs filed suit against defendants seeking declaratory and injunctive relief, relief available under the Michigan Consumer Protection Act, attorney fees and costs. Specifically, plaintiffs sought a declaration that the Florence Allan Company was a sham corporation formed to subvert the usury statute and a declaration stating the exact amount of money due under the note with all prior interest payments having been applied to the principal balance. Plaintiffs also sought an injunction against the foreclosure sale of plaintiffs' home.

On January 20, 1982, the circuit judge issued an order temporarily restraining the foreclosure. On February 24, 1982, the court extended the restraining order for 60 days, on the contingency that plaintiffs pay the principal sum due on the note executed on October 17, 1980. Plaintiffs were unable to pay the principal and the foreclosure was completed. Defendant Wine took possession of the property.

Defendants moved for summary judgment, contending that plaintiffs had failed to state a claim upon which relief could be granted. On February 4, 1983, the circuit court granted the motion for summary judgment, apparently based on GCR 1963, 117.2(1):

"It seems to me based upon the status of the file, now that I have reviewed the depositions here, that the plaintiffs incorporated for the purpose of obtaining this loan, and as a consequence paid a usurious rate of interest in order to obtain the loan.

"The statute [MCL 450.1275; MSA 21.200(275)] itself

involved here under incorporation that was, in effect, at the time permitted the incorporation for such business purposes. Counsel now claims that this was not a business purpose.

\* \* \*

"The corporation is a declaration of your intent to do so, it doesn't mean that you must or shall. The fact that your clients here did not carry on some business after forming this corporation doesn't render the corporation a sham."

The court concluded that there was no "actual controversy" between plaintiffs and defendants, suggesting that plaintiffs' relief was limited to bringing an action as shareholders against the Florence Allan Company to have it declared a dummy corporation.

On appeal, plaintiffs contend that the circuit court erred by dismissing their complaint for declaratory and Michigan Consumer Protection Act relief. This Court permitted the Attorney General to intervene on plaintiffs' behalf. This Court also granted the request of 15 designated mortgage lenders for leave to file an amicus curiae brief (amicus lenders). The amicus lenders have interests similar to those of defendant Wine in the present action.

## II

On appeal, the Attorney General argues that the trial court incorrectly granted summary judgment because *Borinstein v Raycon Land Co,* 370 Mich 359; 121 NW2d 862 (1963), and the Business Corporation Act, MCL 450.1101 *et seq.;* MSA 21.200(101) *et seq.,* support a finding that the Florence Allan Company was a sham corporation formed to subvert the usury statute. We agree that plaintiffs'

claim for declaratory relief stated a claim on which relief could be granted.

Defendants recognized that the usury ceiling of 7%, set forth in MCL 438.31; MSA 19.15(1), would preclude them from transacting second mortgages at 24% per annum. Defendants, however, relied on the corporate exception, MCL 450.1275; MSA 21.200(275), which states:

"Sec. 275. A domestic or foreign corporation, whether or not formed at the request of a lender, may be agreement in writing, and not otherwise, agree to pay a rate of interest in excess of the legal rate and in such case the defense of usury is prohibited."

Plaintiffs argue that a lender should not be permitted to circumvent the usury laws by inducing a borrower to incorporate in order to obtain a non-business loan. Defendants contend that persons who form a shell corporation in order to receive a loan cannot later assert the usury defense for themselves or the corporation.

Courts in other jurisdictions have devised various methods for dealing with the corporate exception to usury laws. See 1 Fletcher, Cyc Corp, 1984 Cum Supp, § 45.2, p 45; 63 ALR2d Later Case Services 306, § 14. The leading cases addressing this issue are from New York and New Jersey. A minority of states have adopted the New Jersey rule. Under this rule, the corporate form is disregarded if the substance of the loan transaction involves a loan to an individual instead of a corporation. See *Monmouth Capital Corp v Holmdel Village Shops, Inc,* 92 NJ Super 480; 224 A2d 35 (1966). Most states follow the more restrictive New York rule. See *RepublicBank Dallas v Shook,* 653 SW2d 278 (Tex, 1983); *Matter of LeBlanc,* 622 F2d 872 (CA 5, 1980).

In New York, like Michigan, if a loan is made to a corporation, the corporation, by statute, is prohibited from asserting the defense of usury. Where an individual borrows money through a shell corporation to further his own business or commercial enterprise, the defense of usury is not available. However, where the loan was in fact, although not in form, made to an individual borrower to discharge personal obligations and not to further a corporate or personal enterprise, the individual borrower may assert the defense of usury. See *Schneider v Phelps,* 41 NY2d 238; 391 NYS2d 568; 359 NE2d 1361 (1977); *Kaye v Keret,* 89 App Div 2d 885; 453 NYS2d 449 (1982). The rationale for this rule was explained by the court in *Schneider:*

"These rules developed as a result of the prohibition against the corporate use of the usury defense. It soon became apparent that, in making loans to individuals, the usury laws could be easily avoided by the simple expedient of establishing a corporation and making the loan directly to it instead of to the ultimate individual user of the proceeds. The sole purpose of such 'dummy' corporations is to serve as a paper conduit for the transmission of funds from the lender to the true borrower. Typically, such corporations would have no corporate assets and would transact no other business. There generally is no practical reason for these corporations to have any other purpose. Their function is simply to receive funds and to pass them on to the ultimate user. Through this practice, the lenders could demand usurious rates of interest from desperate and unsophisticated borrowers cloaked with a corporate veil. If form were to control, the creation of a corporation would, for all practical purposes, result in a waiver of the right to assert the usury defense. The salutary commercial purpose of the corporation exemption would be a shield for the loan shark." 41 NY2d 242-243; 391 NYS2d 571; 359 NE2d 1364-1365.

The Michigan courts have long recognized that the purpose of the law of usury is to protect the necessitous borrower. In *Wilcox v Moore,* 354 Mich 499; 93 NW2d 288 (1958), the Supreme Court upheld the application of the usury statute to a real estate transaction which the Court found was in fact a usurious mortgage loan cloaked as a sale and repurchase. The Court stated:

"There is no need, at this late date in the law of usury (see Leviticus 25:35-37; Deuteronomy 23:19, 20; Saint Chrysostom's Fifth Homily on the Gospel of St. Matthew; CL 1948, § 438.52 [Stat Ann § 19.12]) to discuss its rationale. Suffice to say that its purpose is to protect the necessitous borrower from extortion. In the accomplishment of this purpose a court must look squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty. We are interested not in form or color but in nature and substance." 354 Mich 504 (footnote omitted).

In *Borinstein, supra,* three individuals formed a corporation in order to obtain a loan at a higher rate of interest than permitted by law to be charged to them as individuals. The individuals conveyed title of their real estate to the corporation, which in turn executed a mortgage and borrowed money at an annual rate of 24%. At the time *Borinstein* was decided, the General Corporations Act provided:

"Sec. 78. Corporations domestic or foreign may by agreement in writing, and not otherwise, agree to pay any rate of interest in excess of the legal rate and in such instances where the rate is above the legal rate the defense of usury is prohibited * * *." MCL 450.78; MSA 21.78.

The Supreme Court upheld the trial court's finding

that the loan was not usurious as it was made to the corporation, not to the individuals. Quoting the trial judge's findings of fact, the Court stated:

" *'This is not the case of a hard pressed individual or group being forced by a borrower to set up a dummy corporation for the 1 loan* as in *Wilcox v Moore,* 354 Mich 499, cited and relied upon by defendant, Fred Gattegno. Here was a group of men who for some years to *avoid personal liablity* and *for tax purposes* had some 30 corporations used indiscriminately in shuffling funds both in borrowing and spending who set up another corporation, Raycon Land Company, for their own purposes, and used it along with their *other* corporations for their *own purposes,* as they had done in previous borrowing transactions with plaintiff and Brown. These defendants were rather adroit operators in their field,— at least for a while. It was not to protect such as defendants that the usury statute was intended to be applied.' " 370 Mich 361 (emphasis added).

The clear inference in *Borinstein* is that an individual, forced by a borrower to set up a dummy corporation in order to obtain a loan, may assert the defense of usury.

Defendants assert that when the Legislature enacted the present Business Corporation Act in 1972, the Legislature added the language "whether or not formed at the request of a lender" to § 275, MCL 450.1275; MSA 21.200(275), in order to negate the inference of *Borinstein.* We believe that it is more reasonable to conclude that the amendment to § 275 was only designed to prevent the application of *Borinstein* to business operations. It is clear that under § 275 a business operation, which was required to incorporate as a prerequisite to obtaining a loan, may not assert the defense of usury. However, we cannot conclude that the language added to § 275 authorizes a

lender to seek the incorporation of household borrowers in hopes of circumventing the usury laws.

Our analysis of § 275 and *Borinstein* leads us to the conclusion that Michigan follows the New York rule. We believe that in Michigan, as in New York, where an individual borrows money through a dummy corporation, to further his own personal or commercial enterprises, the defense of usury is not available. However, where the loan is made to an individual borrower to discharge his personal debts and obligations, and not in furtherance of a corporate or business enterprise, the individual borrower may assert the defense of usury. This doctrine protects both consumers and lenders. Consumers are protected from the practice of second-mortgage lenders insisting that the consumer form a corporation in order to demand usurious rates of interest. On the other hand, innocent lenders would not be subject to claims of usury by borrowers who were in business, but merely did not engage in corporate formalities. The interests of the amicus curiae lenders would be protected by MCL 438.5; MSA 19.3. Under this section, an assignee is protected from the usury defense if the assignee had no notice of the usurious contract and acquired its interest in good faith for valuable consideration.

In a case such as this, the availability of the defense of usury turns on the resolution of a question of fact: whether the corporate form was used to conceal a usurious loan to an individual borrower made to discharge personal debts and obligations of the individual borrower. See *Borinstein, supra,* p 362; *Schneider, supra,* 41 NY2d 241-242; 391 NYS2d 570; 359 NE2d 1364. In the present case, the plaintiffs alleged that they incorporated in order to obtain a loan, the proceeds of which were to be used to repair their residence,

pay the arrearages on the first mortgage on their residence and purchase a used truck. They alleged that the Florence Allan Company never adopted by-laws, authorized the issuance of stock, entered into any subscription agreement with any potential stock purchasers, elected a board of directors or appointed officers. They further alleged that Florence and Elmer Allan were unfamiliar with the nature of the corporate entity and had no prior experience in the way a corporation functions. These allegations were sufficient to preclude the grant of summary judgment under GCR 1963, 117.2(1).

## III

Defendants contends that plaintiffs did not state a claim for declaratory relief because there is no actual controversy between the parties within the meaning of GCR 1963, 521.1. Charging a usurious rate bars the lender from recovering any interest and entitles the borrower to recover attorney fees and court costs. MCL 438.32; MSA 19.15(2). Defendants correctly state that the penal provision regarding the forfeiture of interest attaches only upon an attempt by the lender to seek enforcement by way of foreclosure. *Michigan Mobile Homeowners Ass'n v Bank of the Commonwealth,* 56 Mich App 206; 223 NW2d 725 (1974). However, we reject defendants' contentions that, because usury may only be asserted as a statutory defense, there is no actual controversy between the parties. Plaintiffs responded to defendant Wine's foreclosure notice by filing suit for declaratory relief. If the contract was found to be usurious, plaintiffs were entitled to a declaration of the exact amount of money due under the note and to have all of the interest previously paid applied against any out-

standing principal debt. *Waldorf v Zinberg,* 106 Mich App 159; 307 NW2d 749 (1981). On the record presented, we cannot determine the amount of interest paid; this is a determination to be made by the circuit court. Although we agree with defendants that plaintiffs are not entitled to a declaration that the main contract is void, *Sienkiewicz v Leonard Mortgage Co,* 59 Mich App 154, 157; 229 NW2d 352 (1975), we do not believe that this renders the remaining controversy between the parties moot.

Defendants also claim that plaintiffs are precluded from obtaining declaratory relief because they signed an affidavit purporting to waive the defense of usury. Although we note that the waiver may be void under *Leon v Zlatkin,* 265 Mich 225, 230; 251 NW 377 (1933), we believe that this is an issue that must also be ruled on by the trial court in the first instance.

## IV

We also believe that Count II of plaintiffs' complaint, alleging six violations of the Michigan Consumer Protection Act and requesting declaratory relief, injunctive relief, actual damages and attorney fees, stated a claim upon which relief could be granted. The circuit court granted summary judgment based on its feeling that the Michigan Consumer Protection Act did not extend protection to a corporation.

We note that for purposes of § 11 of the act, MCL 445.911; MSA 19.418(11), which establishes a private cause of action for violations of the act, a "person" is defined to include a corporation. MCL 445.902(b); MSA 19.418(2)(b). More importantly, however, we believe that the circuit judge misconstrued plaintiffs' complaint. It is the individual

plaintiffs, Florence and Elmer Allan, who seek relief under the act. The essence of plaintiffs' complaint is that the entire process by which they were incorporated to obtain the loan involved violations of the act. Therefore, the trial court incorrectly granted summary judgment.

We also reject defendants' argument that the transaction in the instant case does not fall within the statutory definition of "Trade or commerce" contained in MCL 445.902(c); MSA 19.418(2)(c). The Michigan Consumer Protection Act defines unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce which are deemed to be unlawful. MCL 445.903; MSA 19.418(3). The act defines "Trade or commerce" as:

"(c) 'Trade or commerce' means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or *distribution of a service* or property, tangible or intangible, real, personal, or mixed, or any other article * * *." MCL 445.902(c); MSA 19.418(2)(c) (emphasis added).

Plaintiffs' pleadings sufficiently allege conduct which, if proven, falls within this definition. Plaintiffs alleged that defendant M & S Mortgage Company and defendant Lepler advertised and sold their services as mortgage brokers. Plaintiffs' pleadings also allege a sufficient connection between the other defendants and M & S Mortgage. See *Matter of Dukes,* 24 BR 404 (Bankruptcy ED Mich, 1982).

## V

We conclude that plaintiffs' complaint for declar-

atory relief (Count I) and Michigan Consumer Protection Act relief (Count II) stated claims on which relief could be granted, GCR 1963, 117.2(1). Therefore, the circuit court order granting summary judgment for defendants is reversed and this cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.