HOUGHTELING *v.* GOGEBIC LUMBER CO.

**1. PLEADING—NOTICE OF DEFENSE—PRACTICE—USURY.**
Under the statute of amendments, 3 Comp. Laws, § 10268, the
trial court did not err, in an action on a contract which ap-
peared to be usurious on its face, in permitting defendant,
whose attorneys had notified plaintiffs' attorneys five days
before trial of their intention to rely on the defense of usury,
to file a notice of the amendment to their plea of the general
issue.

**2. BONDS—MORTGAGES—SALES—LOAN.**
Bonds in the hands of the maker, like promissory notes, are not
the subject of sale.

**3. SAME—USURY.**
Where bonds are issued at ten per cent. discount from their
par value to a firm of dealers in securities, in the absence of
evidence that the discount was regarded by the parties as
payment for services to be rendered, the transaction was
usurious.

**4. USURY.**
Where the clear legal effect of a contract to issue bonds at a
discount was usurious, the intent of the parties in consider-
ing the expense of furnishing the money and of resale, etc.,
does not affect the right of the corporation so issuing the
securities to defend, on the ground of usury, an action for the
profits lost by reason of its breach of the contract.

Error to Kent; Perkins, J. Submitted January 6,
1911. (Docket No. 46.) Decided May 8, 1911.

Assumpsit by James L. Houghteling, William R. Stir-
ling, Augustus S. Peabody, Alexander Smith, and James
L. Houghteling, Jr., copartners as Peabody, Houghtel-
ing & Company, against the Gogebic Lumber Company
for breach of a special contract. A judgment for defend-
ant on a verdict directed by the court is reviewed by plain-
tiffs on writ of error. Affirmed.

*Taggart & Taggart,* for appellants.

*Bundy, Travis & Merrick,* for appellee.

OSTRANDER, C. J.   The suit is brought to recover damages for breach of a contract which is declared upon specially.   The common counts in assumpsit are in the declaration.   Upon the testimony introduced for plaintiffs, and upon the motion of defendant in that behalf, the court below directed a verdict for defendant, upon the ground that the contract sued upon was usurious.

We consider, first, a question of practice.   The defendant pleaded the general issue to a declaration filed June 25, 1909.   It advised plaintiffs' attorneys, by mail, on April 8, 1910, that it would ask for leave to amend the plea and intended to make usury a defense.   The cause came on to be tried April 13, 1910.   It does not appear that leave to amend the plea was asked for until after plaintiffs had closed their case.   Reference to the subject is made by the court in determining the motion to direct a verdict and in the following language:

"As to whether or not there should have been a notice under the plea to the effect that the defense of usury was claimed, I am not so clear.   As I have already said, it seems to me that, inasmuch as this case is planted upon a contract usurious on its face, and that the plaintiffs claimed damages resulting from a breach of that contract on the part of the defendant, and the damages must necessarily include that part of the contract which is usurious, that such notice would be unnecessary, because the rule is under the statute that no part of the usurious interest or compensation is collectible at all, if the contract itself is usurious; and so the very basis of the plaintiffs' damages would be swept away by the statute itself, if the contract is usurious.   So the real question is as to whether it is usurious or not.   I have held that it is usurious.   Therefore no notice is necessary.   But as counsel has expressed a wish to file a notice under the defendant's plea, in an abundance of caution, such a notice may be filed to complete the record.   While in my judgment it is not necessary, yet that judgment is not always correct."

Notice of the defense of usury was actually filed April 18, 1910. It is not very clear that an exception to the ruling permitting the notice to be filed was intended. Resolving doubt in favor of plaintiffs, we are of opinion that the court had power to permit the notice to be then given, and that the power was not abused. 3 Comp. Laws, § 10268. The action is not brought to recover money lent upon interest, or to recover interest. The defense is that the contract relied upon by plaintiffs is not enforceable because involving in its enforcement usury. If it was usurious, it so appeared upon its face. It is not claimed that plaintiffs were surprised. The court having considered the defense as made and based decision upon its validity, we regard the delay in filing the notice as an irregularity which resulted in no prejudice to any one.

The principal question which, if answered in defendant's favor, is decisive of plaintiffs' rights to recover in this suit arises upon the contention of plaintiffs that defendant agreed to execute, secure, and sell to them an issue of $250,000 of bonds, drawing interest at the rate of 6 per cent. per annum, payable semi-annually, the principal payable at periods running from six months to six years, "at the price of 90 and accrued interest net to you," and the refusal of defendant to perform the agreement. It is conceded that, if the discount of 10 per cent. should be treated as interest or as a price to be paid by defendant for the use of money to be furnished by plaintiffs, the contract is usurious. 2 Comp. Laws, § 4857.

Plaintiffs do not act as mere agents or brokers, but buy bonds, employing their own capital, and sell or seek to sell bonds so acquired at a profit. They employ a considerable force of servants and agents, at considerable expense, to investigate the proposals of those who offer bonds for sale, and to sell such bonds as they buy. It is the modern business way for those intending to issue bonds to interest houses like that of plaintiffs, for the purpose of exploiting the bonds; because such a house, with a

good reputation, is able to furnish a market for the bonds which the seller would enter with difficulty, and perhaps without securing buyers. Defendant proposed to issue a series of bonds aggregating $250,000, secured by a mortgage running to a trustee to be named by plaintiffs, the bonds to be indorsed by two men who are named in the proposal, and plaintiffs proposed to buy them. The terms employed in the option or proposal of defendant are, " We hereby agree to sell to you the bonds,"etc.

The security, which consisted of timbered lands, was examined by plaintiffs. No expense connected immediately with the issue of the bonds or the examination of the security and the character of the business carried on by defendant, or the proposed indorsers, was borne, or was agreed to be borne, by plaintiffs.

It is the contention of the plaintiffs, that—

" Where a bond house, engaged in the business of buying and selling securities, undertakes to purchase bonds at a discount, to be resold to its customers, the discount is not interest, but compensation for its services in marketing the bonds."

Taken literally, this statement presents two contentions, one, that what was intended by the parties, and what the agreement provided for, was a sale of securities, and not a loan; the other, that the sum of money to be paid by plaintiffs, plus the value of plaintiffs' services, was the real consideration moving to defendant. With respect to the first contention, it has been said:

"Surely the question whether a negotiation of bonds was a sale or a loan is ordinarily and *prima facie* a question of fact. To make it a question of law, some fact must be admitted or proved which is irreconcilable with one conclusion or the other." Bradley, J., in *Junction Railroad Co.* v. *Bank of Ashland*, 12 Wall. (U. S.) 226.

We are of opinion that the facts in this case necessarily import a loan. It must be assumed that the plaintiffs have established themselves for their own profit, and that

if they excel competitors in methods or in reputation it is evidenced by the volume of business transacted by them. We find nothing to sustain the conclusion that the discount demanded and agreed to be paid was regarded by either party as pay for services rendered or to be rendered. Plaintiffs appear to have offered the going price for bonds of the character and with the security of those proposed to be issued.

The bonds in defendant's hands were not representative of property. They would become property or representative of property, and the subject of sale, only after the contemplated negotiation was completed and the money, repayment of which was promised and secured, as well by the indorsements as the mortgage, was actually turned over to, and became the property of, the defendant. The bonds were to have no inception, no action upon them could be maintained, as between these parties, until they were parted with, for money, to plaintiffs. It is the general rule that a note or other obligation in the hands of the maker thereof is not the subject of sale. 29 Am. & Eng. Enc. Law (2d Ed.), p. 476.

In a single case to which our attention is directed, namely, the *Junction Railroad Co.* v. *Bank of Ashland,* *supra,* a transfer of bonds by the maker thereof was found to be a sale, and not a loan. But decision was rested, at least in the appellate court, upon the fact that a statute authorized the obligor to borrow money and to execute bonds or promissory notes therefor, and to sell such bonds and notes at such prices as, in the opinion of the directors, would best advance the interests of the company.

That such a contract as we are considering is usurious, was decided in *George N. Fletcher & Sons* v. *Alpena Circuit Judge,* 136 Mich. 511 (99 N. W. 748). It is said we may take into account the price to be paid for the bonds, the expense of furnishing the money, and the expenses of resale, as affecting the intent with which the agreement was made. In other words, as showing that

there was no intention to exact from the defendant unlawful interest.  If there was a mistake of law, that, it is conceded, would be no excuse.  There is also the rule of law that the clear legal effect of a contract makes unimportant the intent with which it was made, when it is sought to enforce it according to its terms.  We were not inattentive at the hearing, and have not been at chambers, to the argument that modern business methods and business convenience may be judicially taken notice of, and that courts, in considering such questions as the one presented upon this record, should declare valid contracts which conform with, and are but expressions of, business necessities and convenience, when it is apparent that no actual wrong or oppression was intended, and where, from the business standpoint, none has resulted.  The legislature has declared contracts, such as the one in question, usurious.  The courts may not disregard the statute, invoked as it is by a party to the contract.  It is the legislature alone which has power to amend the law.

The judgment is affirmed.

BIRD, HOOKER, BLAIR, and STONE, JJ., concurred.