MUSKEGON CITIZENS LOAN & INVESTMENT CO. *v.*
CHAMPAYNE.

1. BILLS AND NOTES—CONTRACTS—PERFORATION—DETACHMENT—NO-
TICE OF NEGOTIABILITY—HOLDER IN DUE COURSE.

Where note executed by makers was separated from advertising
contract by perforation, and no reference was made in one to
other, makers had notice that note as such could be and prob-
ably would be detached and used in regular course as negotiable
instrument, and therefore they may not disavow liability to
purchaser of note in due course, especially where they had
notice of said purchase and had paid several instalments to
purchaser.

2. SAME—NEGOTIABILITY.

Law is solicitous to exclude any rules calculated to hinder free
circulation of mercantile paper having legitimate inception.

3. SAME—HOLDER IN DUE COURSE—NOTICE OF DEFENSES.

Purchaser of negotiable note need not make inquiries as to pos-
sible defenses, unless from something appearing on face of
note or facts communicated to him he could not honestly pur-
chase without making further inquiry.

Appeal from Muskegon; Miles (Fred T.), J.,
presiding. Submitted January 19, 1932. (Docket
No. 185, Calendar No. 36,049.) Decided March 2,
1932.

Assumpsit by Muskegon Citizens Loan & Invest-
ment Company against Clarence Champayne and
another on a promissory note. Verdict and judg-
ment for defendants. Plaintiff appeals. Reversed,
and judgment ordered entered for plaintiff.

*Harold H. Smedley,* for plaintiff.

*F. E. Wetmore,* for defendants.

As to knowledge or notice sufficient to put purchaser upon
inquiry, see annotation in 32 L. R. A. 45.

NORTH, J. The defendants signed and delivered to the payee a note reading as follows:

"$312                                    August 16, 1929.
"For value received, we or I, promise to pay to the Kei-Lac Company of Michigan or order three hundred twelve—no/100 dollars ($312) in 12 payments of twenty-six dollars ($26) each, and said payments to be made at intervals of 30 days each from date. All payments are due and payable on default of any, including interest and all collecting cost.
    "Payable at Muskegon, Mich.
                "Name, WM. CHAMPAYNE & SON (Signed)
                    "By CLARENCE CHAMPAYNE (Signed)
            "Address 98 W. Clay Ave."

Under the stipulated facts it appears that the foregoing note was attached to a contract, the two being separated by a perforated line extending across the paper. Under the terms of the contract, the payee of the note over a period of 12 months was to render certain advertising services to the maker, payable in monthly instalments of $26 each. The payee without plaintiff's knowledge detached the above-quoted note, and, before the first instalment was due, discounted it to plaintiff, which, under the stipulated facts, "took the same without knowledge of any defect and paid value for it and became a holder in due course." Defendants paid plaintiff the first three instalments approximately on the respective due dates, the last one on December 10, 1929. About this time the Kei-Lac company became insolvent and discontinued business. It rendered defendants no further service under the contract. In plaintiff's suit brought upon the note, the defense urged is thus set forth in the record:

"The defendant claims that by reason of the note being only part of the contract and being thereafterwards detached from said contract, without their consent, that said note became and was and is wholly void and without consideration and is not collectible even in the hands of a *bona fide* holder."

The circuit judge who heard the case without a jury stated in his written opinion that the defendants would not have signed the note apart from the contract, and "it must be held that the note and contract were and are one and not two separate instruments." He rendered judgment for defendants, and plaintiff has appealed.

Since decision in the circuit court an opinion has been handed down by this court in *Kewanee Private Utilities Co.* v. *Runzel,* 256 Mich. 345. We think the controlling facts in the two cases are identical, and that the judgment entered in the circuit court in the instant case must be reversed.

There is nothing in this record which would justify charging plaintiff with notice before purchase of any fact or circumstance tending to negative negotiability of the instrument purchased by it. Immediately upon purchasing the note it gave written notice to the makers, who thereafter without protest paid the first three instalments. The perforation between that portion of the paper on which the note was printed and the portion which contained the terms of the advertising contract, there being no reference in the one portion to the other, was ample notice to defendants that the note as such could be and probably would be detached and used in regular course as negotiable instruments are used. Persons who execute negotiable instruments under such circumstances cannot be allowed to disavow the obligation when such instruments before maturity have

come into the hands of innocent purchasers for value.

"The law has always been solicitous to exclude any rules calculated to hinder the free circulation of mercantile paper having legitimate inception." *Nichols* v. *Sober,* 38 Mich. 678.

"It is not the duty of parties about to purchase negotiable paper to make inquiries as to possible defenses, unless either from something appearing upon the face of the paper, or from the facts communicated to them at the time, they could not honestly purchase without making further inquiry; in other words that they acted in bad faith." *Howry* v. *Eppinger,* 34 Mich. 29.

Judgment is reversed, and the case remanded to the circuit court, with direction to enter judgment in favor of plaintiff. Costs to appellant.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.